# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TODD ALFORTISH, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                     **NO. 16-15084**

**GREENSKY, LLC, ET AL.**                      **SECTION "B"(1)**

### ORDER AND REASONS

Before the Court is "Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Arbitration." Rec. Doc. 26. Plaintiff timely filed an opposition memorandum. Rec. Doc. 29. Defendants then requested (Rec. Doc. 30), and this Court granted (Rec. Doc. 31), leave to file a reply memorandum (Rec. Doc. 32). Thereafter, Plaintiffs requested (Rec. Doc. 33), and this Court granted (Rec. Doc. 35), leave to file a sur-reply memorandum (Rec. Doc. 36). For the reasons discussed below,

**IT IS ORDERED** that the motion to compel arbitration (Rec. Doc. 26) is **GRANTED**. Plaintiffs are directed to submit all of their claims to arbitration.

**IT IS FURTHER ORDERED** that this case is stayed and **ADMINISTRATIVELY CLOSED**. Either party may file a motion to reopen for good cause following the arbitration of the parties' claims. If the case is disposed of through arbitration, or any other means, Plaintiffs shall promptly file a motion to dismiss.

**IT IS FURTHER ORDERED** that the pending motions, including Plaintiffs' "Motion to Certify Class" (Rec. Doc. 19) and

"Defendants' Alternative Motion to Dismiss Plaintiffs' First Amended Class Action Complaint" (Rec. Doc. 28) are **DISMISSED AS MOOT.**

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the marketing and sale of solar energy systems. Several Louisiana solar companies, including Joule, LLC, Southcoast Solar, A-1 Solar Source, and SunPro ("the Solar Companies"), sold energy systems to Todd and Sylvia Alfortish, James Fincher, and a class of similarly situated individuals ("Plaintiffs"). Rec. Doc. 13 at ¶¶ 1-3. These companies promised their customers "energy savings and guaranteed federal and Louisiana state income tax refunds," even though, by early 2015, they knew or should have known that the state income tax refunds were not guaranteed. *Id.* at ¶¶ 3-4. In fact, the companies were purportedly actively lobbying against legislation designed to cap the total amount of solar energy income tax credits—legislation that went into effect on June 19, 2015. *Id.* at ¶¶ 29-30. Ultimately, Plaintiffs' applications for state income tax credits were denied because of this legislation. *Id.* at ¶ 37.[1]

---

[1] It was not alleged by the parties, but it is worth noting that, from records submitted to the Court, it appears that Plaintiffs Todd and Sylvia Alfortish agreed to purchase their solar energy system on November 16, 2015, while Plaintiff James Fincher agreed to purchase his solar energy system on June 25, 2015—after the legislation apparently went into effect. *See* Rec. Docs. 32-1, 32-2.

The Solar Companies also presented Plaintiffs with eighteen-month "interest free" "bridge loans" from GreenSky, LLC ("Defendant GreenSky"). *Id.* at ¶ 6. However, these loans were "interest waivable," not "interest free," and carried an interest rate of at least 17.99%. *Id.* at ¶¶ 7, 9. The interest would only be waived "if the entire bridge loan was satisfied within 18 months of the purchase." *Id.* at ¶ 34. The "bridge loans" were "purportedly designed to act like gap financing in order to allow [customers] enough time to file their tax returns and receive their state income tax credits to satisfy the loans in full before they would ever have to pay interest." *Id.* at ¶ 33. According to the amended complaint, "[h]ad Plaintiffs known about the potential unavailability of the . . . tax credits, and therefore the . . . risk that Plaintiffs would have to pay onerous interest rates which began to accumulate from the date of purchase . . . Plaintiffs would not have purchased the solar energy systems." *Id.* at ¶ 38.

According to Plaintiffs, the Solar Companies were acting as agents on behalf of Defendant GreenSky, which gave the companies the authority to enter into finance agreements and represent the terms of the loans. *Id.* at ¶ 11. Plaintiffs allege that Defendant GreenSky knew that the Solar Companies were misrepresenting the terms of the loans. *Id.* at ¶ 36. Further, Plaintiff alleges that Synovus Bank ("Defendant Synovus") and SunTrust Bank ("Defendant SunTrust") partnered with Defendant GreenSky. *Id.* at ¶¶ 14-15.

Specifically, Defendant Synovus was the lender for Plaintiffs Todd and Sylvia Alforish, while Defendant SunTrust was the lender for Plaintiff James Fincher. *Id.* at ¶ 25. Defendant GreenSky was merely the servicer of the loans. Rec. Doc. 26-2 at 4 n.2.[2]

On November 22, 2016, Plaintiffs filed an amended complaint, alleging a class action against Defendants GreenSky, Synovus, and SunTrust, on behalf of "all Louisiana residents who entered into finance agreements ('bridge loans') with GreenSky as a result of purchasing solar energy systems from the Solar Companies and who were denied the solar energy state income tax credit." Rec. Doc. 13 at ¶ 40. Plaintiffs estimate that the class consists of more than five hundred households. *Id.* at ¶ 41.[3] Nonetheless, Plaintiffs asserted causes of action under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA," LA. REV. STAT. Ann. §§ 51:1401-30); the Truth in Lending Act ("TILA," 15 U.S.C.A. § 1638); the Louisiana Consumer Credit Law ("LCCL," LA. REV. STAT. Ann. §§ 9:3510-77.5); as well as a common law claim for unjust enrichment. *Id.* at ¶¶ 48-73.

---

[2] Citing *Bentley v. GreenSky Trade Credit, LLC*, 156 F. Supp. 3d 274, 292 (D. Conn. 2015), *reconsideration denied sub nom. Bentley v. Tri-State of Branford, LLC*, No. 14-1157, 2016 WL 2626805 (D. Conn. May 6, 2016) (where the court recognized, based on GreenSky's Rule 56 statement, that it is a "third-party service provider that partners with lenders that fund loans under the GreenSky program").

[3] There is a pending motion to certify the class, but it is not set for submission until December 20, 2017. Rec. Doc. 19.

## II.  <u>THE PARTIES' CONTENTIONS</u>

Defendants assert that the contracts entered into by Plaintiffs contain an agreement to arbitrate all claims. Rec. Doc. 26-2 (citing Rec. Docs. 26-3, 26-4). On December 20, 2016, about a month after the amended complaint was filed, Defendants' counsel informed Plaintiffs' counsel that Defendants were invoking the arbitration clause. *Id.* at 6 (citing Rec. Docs. 26-5, 26-6). Defendants requested that the complaint be dismissed by January 10, 2017, but Plaintiffs neither dismissed the complaint nor responded to Defendants' letters. *Id.* at 7.

In response, Plaintiffs allege that

[i]t is only after the consumer is hoodwinked into financing a solar energy system through these onerous 'interest waivable' balloon loans that Defendants send the terms and conditions at issue in their pending Motion – terms and conditions that the consumer never saw before agreeing to the loan and that were never discussed with them, and perhaps most importantly, terms contained in a 10 page "Loan Agreement" that has never been signed by them.

Rec. Doc. 29 at 2. They explicitly deny signing the loan agreements relied upon by Defendants. *Id.* at 5. "GreenSky sends this Loan Agreement . . . after the consumers have already been approved for their loan and after the solar contractor receives the loan money as payment . . . so that it can later have the opportunity to limit consumers' rights once they have caught on to Defendants' deceptive lending scheme." *Id.* In essence, they argue that Defendants failed

"to show that Plaintiffs actually consented to arbitrate their claims . . . ." *Id.* at 2.

In their reply, Defendants argue that (1) Plaintiffs' challenge should be decided by the arbitrator, but (2) even if it is considered here, the challenge lacks merit. Rec. Doc. 32 at 1. Plaintiffs address these arguments in their sur-reply. Rec. Doc. 36. To the extent that they help the Court resolve the issue before it, the parties' arguments will be discussed below.

### III. <u>LAW AND ANALYSIS</u>

"Arbitration is favored in the law." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, as a threshold matter, the FAA applies where the transaction at issue involves commerce. *See, e.g. New Orleans Cold Storage & Warehouse Co., Ltd. v. Grenzebach Corp.*, No. 15-6642, 2016 WL 279012, at *4 (E.D. La. Jan. 22, 2016) (noting that "[t]he Fifth Circuit has held that '[c]itizens of different states engaged in performance of

6

contractual operations in one of those states are engaged in a contract involving commerce under the FAA.'") (quoting *Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986) (citing 9 U.S.C. § 2)).

According to the courts, § 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (citing 9 U.S.C. § 2). It was "Congress's clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22. Essentially, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24-25.

"[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (noting that any doubts regarding arbitrability should be resolved in favor of arbitration) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984))). Nonetheless, § 2 of the FAA contains a savings clause, which provides that an agreement to arbitrate is "enforceable, save upon such grounds as exist at law or in equity

<u>for the revocation of any contract</u>." 9 U.S.C. § 2 (emphasis added). Thus, "[d]etermining whether the parties agreed to arbitrate the dispute in question involves two considerations:  (1) whether a valid agreement to arbitrate between the parties exist; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)).

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE ANN. art. 1906. A valid contract in Louisiana requires capacity, consent, a lawful cause, and a valid object. *Granger v. Christus Health Ctr. La.*, 12-1892 (La. 6/28/13); 144 So. 3d 736, 761 (internal citations omitted); *see also* LA. CIV. CODE ANN. arts. 1918, 1927, 1966, 1971. Consent is "established through offer and acceptance," which may generally "be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." LA. CIV. CODE ANN. art. 1927. "Thus, an enforceable contract requires a meeting of the minds." *Read v. Willwoods Cmty.*, 14-1475 (La. 3/17/15); 165 So. 3d 883, 887, *reh'g denied,* (May 1, 2015) (citing *State v. Pelas*, 99-0150

(La. App. 1 Cir. 11/5/99); 745 So. 2d 1215, 1217). Further, "it is the burden of the party seeking to enforce a contract to show the contract exists." *FIA Card Servs., N.A. v. Weaver*, 10-1372 (La. 3/15/11); 62 So. 3d 709, 719 (citing LA. CIV. CODE ANN. art. 1831; *Kosmala v. Paul*, 569 So. 2d 158, 162 (La. App. 1 Cir. 1990), *writ denied,* 572 So. 2d 91 (La. 1991) ("The party seeking to enforce arbitration provisions has the burden of showing the existence of a valid contract to arbitrate") (citing *Ciaccio v. Cazayoux*, 519 So. 2d 799, 800 (La. App. 1 Cir. 1987))).

Here, the loan agreements purportedly entered into by Plaintiffs contain an arbitration provision that provides, in pertinent part, "UNLESS YOU OPT OUT OF THIS ARBITRATION PROVISION (AS PROVIDED BELOW) NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE A CLAIM IN COURT OR HAVE A JURY TRIAL ON A CLAIM." Rec. Docs. 26-3 at 5 (¶ 24); 26-4 at 5 (¶ 24) (emphasis in original). The contract further defines "Claim" to "include any claim, dispute or controversy of every kind and nature, whether based in law or equity, between you and us arising from or relating to your GreenSky Installment Loan Agreement as well as the relationship resulting from such Agreement . . . including the validity, enforceability or scope of this Arbitration Provision or the Agreement." *Id.* The arbitration provision also contains a class action waiver, explicitly provides that it is governed by the FAA

(9 U.S.C. §§ 1-16), and informs the parties of the appropriate manner in which to opt-out of the arbitration agreement. *Id.*

In the memorandum in support of their motion, Defendants argue that Plaintiffs do not dispute that they signed the loan agreements, that they admitted to making payments pursuant to the agreements, and that they did not opt-out of the agreements. Rec. Doc. 26-2 at 9. They cite two cases in support. *See, e.g. Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672, 675 n.2 (5th Cir. 2006) (where the Fifth Circuit agreed with the district court that there was an arbitration agreement because the plaintiff was aware that the defendant adopted the arbitration policy; plaintiff had an opportunity to opt-out, but he did not; the plaintiff worked for the defendant for several years after the policy was implemented; and Texas law presumes that the plaintiff understood and accepted the terms); *Langlois v. Amedisys, Inc.*, No. 15-835, 2016 WL 4059670, at *2 (M.D. La. July 27, 2016) (finding that an arbitration agreement existed and consequently compelling arbitration where the plaintiff acknowledged receipt of an e-mail that informed her that, unless she opted-out within thirty days, she would be bound by the defendant's arbitration agreement and it was undisputed that the plaintiff never opted-out). Thus, Defendants argue that a valid agreement to arbitrate existed between the parties.

Plaintiffs assert that they did not sign the agreements, did not assent to the arbitration provision, and that Defendants have failed to prove that they agreed to individually arbitrate their claims. Rec. Doc. 29 at 7. Plaintiffs admit that they signed solar contracts with SunPro and agreed to obtain financing from Defendant GreenSky, but they deny ever having signed the loan agreements containing the arbitration provision. *Id.* at 8 (citing Rec. Docs. 26-3 at 3; 26-4 at 3 (where signature spaces are available for Plaintiffs, but left blank)). Plaintiffs allege that they were completely unaware of the existence of the loan agreements and did not have access to the documents at the time they signed the solar contracts. *Id.* Plaintiffs thus conclude that they could not have agreed to individual arbitration. *Id.* (citing *Pennhurst State Sch. & Hosp. Halderman*, 451 U.S. 1 (1981)).[4]

Plaintiffs further argue that their failure to opt-out does not evidence their assent to the arbitration agreement and that

---

[4] We are not persuaded by the *Pennhurst* case relied upon by Plaintiffs. That case involved questions of Congress's power to legislate pursuant to the spending power. 451 U.S. at 17. The Supreme Court noted that such legislation is comparable to a contract: "in return for federal funds, the States agree to comply with federally imposed conditions." *Id.* The legitimacy of this power "rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Id.* (internal citations omitted). It was then that the Supreme Court noted that "[t]here can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Id.* (internal citations omitted). The Supreme Court was not discussing the enforceability of arbitration agreements or even the enforceability of a typical contract; rather, the Supreme Court was discussing the validity of a particular type of legislation enacted pursuant to Congress' spending power. While the Supreme Court's discussion is not wholly unrelated to the dispute at issue, there are numerous other cases that are more directly on point.

11

the motion to compel arbitration should be denied because Defendants have not satisfied their burden of showing that Plaintiffs assented to the agreement. Rec. Doc. 29 at 9-10 (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999); *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011); *Weaver*, 62 So. 3d at 719-20; *Chase Bank USA, N.A. v. Leggio*, 43,567 (La. App. 2 Cir. 11/19/08); 997 So. 2d 887, 890).[5]

---

[5] Again, we are not persuaded by these cases. *Davis*, like *Pennhurst*, involved questions of Congress' spending power; it further involved interpretation of Title IX. 526 U.S. at 639-50. In *One Beacon*, the Fifth Circuit noted that the validity of a contract requires the court to consider "whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms." 648 F.3d at 269 (citations omitted). It further recognized that there could be "situations involving online terms and conditions where . . . the terms and conditions were not unambiguously incorporated into the parties' agreement or where there was insufficient notice of the location of the terms and conditions such that a reasonable person would not be expected to find them." *Id.* (citations omitted). However, as is discussed more fully *infra*, the document signed by Plaintiffs unambiguously referred to the "GreenSky Installment Loan Agreement" that contained the arbitration provision and further provided that the signatories acknowledged that they "agree[d] to be legally bound by the TERMS AND CONDITIONS of" that agreement. *See* Rec. Docs. 32-1, 32-2. In *Weaver*, the parties admitted that Weaver "never actually signed a contract containing an arbitration clause." 62 So. 3d at 718. Instead, the plaintiff, the party seeking to compel arbitration, argued that, under Louisiana law, "if a credit card company sends a notice of change in terms of the agreement, the customer assents to the new terms by his continued use of the card." *Id.* Because the plaintiff failed to show "when or if the notices were mailed to customers" and if, "after receiving these notices, Weaver continued to use his credit card," the court found that the plaintiff failed to satisfy its burden of showing the existence of a valid arbitration agreement. *Id.* at 718-19. The instant case simply is not comparable. Finally, in *Leggio*, the plaintiff submitted an unsigned, generic agreement including an arbitration clause and alleged that the defendant received a similar document. 997 So. 2d at 890. The plaintiff then argued that the defendant implicitly consented to the agreement because of his "use of the credit card as an acceptance of all of the terms printed in the generic cardmember document." *Id.* The court concluded that "the mere use of a credit card would not logically give rise to the presumption that the consumer thereby understood that he was consenting to arbitration of any dispute concerning such use, <u>particularly when there has not been a showing that the debtor received notice of the alleged arbitration clause</u>." *Id.* (emphasis added). Again, the instant case simply is not comparable.

In their reply, Defendants argue (1) Plaintiffs' challenge to the arbitration clause should be decided by the arbitrator and, alternatively, (2) Plaintiffs' challenge lacks merit.

Turning to their first argument, the loan agreements provide that "claims" arising between the parties will be resolved through binding arbitration. Rec. Docs. 26-3 at 5; 26-4 at 5. "Claim" is further defined to include "any claim, dispute or controversy . . . between you and us . . . , including the validity, enforceability or scope of this Arbitration Provision or the Agreement." *Id.* This is a "delegation provision," which "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The Supreme Court has held that such provisions are valid under the FAA "under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4." *Id.* at 70 (ultimately upholding a delegation provision that provided "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including . . . any claim that all or any part of this Agreement is void or voidable"); *see also Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 375 (5th Cir. 2016) (upholding a delegation provision that provided the

arbitrator with "the exclusive authority" to "determine the arbitrability of any dispute" and "resolve any dispute relating to the interpretation, applicability, enforceability or formation of the [Policy]").

In the Fifth Circuit, "if a party asserts that an arbitration agreement contains a delegation clause, this court only asks (1) whether the parties entered into a valid arbitration agreement and, if so, (2) whether the agreement contains a valid delegation clause." *Reyna*, 839 F.3d at 378 (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201-02 (5th Cir. 2016)). Significantly, "[i]f there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* (quoting *Kubala*, 830 F.3d at 201-02). Thus, Defendants' remaining arguments, that Plaintiffs do not specifically challenge the delegation clause and that the agreement's reference to the rules of JAMS and the American Arbitration Association ("AAA") (both of which provide that arbitrability issues are to be decided by the arbitrator) (*see* Rec. Doc. 32 at 4-6), presume that "the parties entered into a valid arbitration agreement" (as required by the Fifth Circuit in *Kubala* and *Reyna*). Plaintiffs strongly refute the existence of any such agreement. In both *Kubala* and *Reyna*, the Fifth Circuit analyzed whether or not the parties entered into a valid arbitration agreement. We must do the same here.

Accordingly, we turn to Defendants' alternative argument that Plaintiffs' challenge to the arbitration agreement lacks merit. Defendants specifically argue that the documents signed by Plaintiffs, titled the "GreenSky Authorization Form," stated that "I/We acknowledge receipt of the GreenSky Installment Loan Agreement ('Agreement') with the Lender specified on the Agreement, and agree to be legally bound by the TERMS and CONDITIONS of the Agreement." Rec. Doc. 32 at 7 (citing Rec. Docs. 32-1, 32-2). The documents containing the arbitration provision are clearly headed "GreenSky Installment Loan Agreement" and provide that the "TERMS AND CONDITIONS CONTINUE ON NEXT PAGE." *See* Rec. Docs. 26-3 at 3-5; 26-4 at 3-5.

Plaintiffs argue that they never received a copy of the "Greensky Installment Loan Agreement" at the time they signed the "GreenSky Authorization Form[s]." Rec. Docs. 29 at 2; 36 at 3-4. Whether Plaintiffs received the "GreenSky Installment Loan Agreement" before they signed the authorization form, after they signed the authorization form, or never, it cannot be denied that they signed a statement acknowledging receipt of the loan agreement and thereby agreed to be bound by the loan agreement's terms and conditions. *See* Rec. Docs. 32-1, 32-2.

In *Cowan v. Morgan Keegan and Company*, the parties argued about the existence of a valid arbitration agreement. 09-1644, 2010 WL 5103064, at *3 (W.D. La. Nov. 18, 2010), *report and*

*recommendation adopted,* 2010 WL 5141340 (W.D. La. Dec. 1, 2010).

Plaintiff signed a "Disclosure Statement" that provided that the document was governed by an arbitration agreement located in the "Client Agreement." *Id.* Plaintiff argued that there was not a valid arbitration agreement, because he was never presented with the "Client Agreement." *Id.* He also argued "that his poor vision and the blurry fax copy of the Disclosure Statement that he signed prevented him from being aware of the arbitration language." *Id.* The Magistrate Judge recognized that, under Louisiana law, "an arbitration clause need not be contained in a single document to be part of a contract. Instead, the document that contains the arbitration requirement can be incorporated by reference." *Id.* Further, "a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *Id.* (quoting *Aguillard v. Auction Mgmt. Corp.*, 04-2804 (La. 6/29/05); 908 So. 2d 1, 17). "If a party is not aware of the contents of the instrument he signed, he must establish with reasonable certainty that he was 'deceived.'" *Id.* (citing *Aguillard*, 908 So. 2d at 17; *Lamarque v. Barbara Enters., Inc.*, 06-1422 (La. App. 4 Cir. 4/25/07); 958 So. 2d 708, 713). In *Cowan*, the plaintiff did not argue that he was deceived; rather "[h]e was given a legible document, which he readily signed, and that document made specific

reference to an arbitration provision on the reverse side." *Id.* at 4. Even though the plaintiff never actually received a copy of the arbitration agreement, he "could have easily requested a copy . . . and learned the exact terms of the arbitration clause." *Id.* Accordingly, the motion to compel arbitration and stay the proceedings was granted. *Id.* at 5.

The instant case is indistinguishable. Even if there was some allegation that Defendants deceived Plaintiffs into signing the authorization form, there is no evidence of such deceit. Plaintiffs were given forms that explicitly referred to a "GreenSky Installment Loan Agreement" and stated that, if they signed that form, they agreed to be bound by the terms and conditions in the loan agreement. If they did not have a copy of the loan agreement, they could have easily requested a copy. Thus, we find that there was a valid agreement to arbitrate.

Having found that a valid arbitration agreement exists, we will now consider whether or not the instant dispute falls within the scope of the agreement.[6] To determine if a dispute falls within the scope of an arbitration agreement, courts must keep in mind that any doubts should be resolved in favor of arbitration (*see,*

---

[6] We are not ignoring Defendants' argument about the delegation clause. Having found that a valid arbitration agreement exists, we find no reason to conclude that the delegation clause is invalid. Plaintiffs dispute the validity of the agreement as a whole and present no other argument that would persuade this Court to hold that the delegation clause is invalid. However, we are going to continue our analysis under *Pennzoil*, 139 F.3d 1061.

*e.g. Moses H. Cone Mem'l Hosp.*, 460 U.S. 24-25) and that "the Fifth Circuit distinguishes between broad and narrow arbitration clauses" (*Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 724 (E.D. La. 2015), *as modified on denial of reconsideration,* No. 15-1161, 2016 WL 879995 (E.D. La. Mar. 8, 2016)).

> If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause. On the other hand, if the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause.

*Hornbeck*, 981 F.2d at 754-55 (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pennex)*, 767 F.2d 1140, 1145 n.10 (5th Cir. 1985)*, holding modified by Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) (citing *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983))). Clauses containing the "any dispute" language are of the broad type. *Id.* (citing *Sedco*, 767 F.2d at 1144; *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 634 (5th Cir. 1985); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 38 (5th Cir. 1990)).

Defendants urge the Court to classify the instant arbitration provision as "broad." Rec. Doc. 26-2 at 10-11 (citing *Broussard*, 150 F. Supp. 3d at 724 (finding that an arbitration provision was broad when it applied to "all disputes 'relating to the employment relationship,' and include[d] claims based on 'sexual' matters and claims for 'wrongful termination,'" and that provided the "scope of

18

arbitration" was to be decided by the arbitrator); *Pub. Payphone Co. v. Wal-mart Stores, Inc.*, No. 13-2349, 2014 WL 793443, at *2 (E.D. La. Feb. 26, 2014) (finding that the dispute fell within the scope of the arbitration provision because, "[w]here arbitration provisions are so broad as that at issue here, which applies to '[a]ny dispute, claim or controversy arising out of[,] connected with[,] or relating to this agreement . . . ' the dispute need only 'touch matters that are covered by the [Arbitration Provision] to be arbitrable") (quoting *Pennzoil*, 139 F.3d at 1068); *Planet Beach Franchising Corp. v. Zaroff*, 969 F. Supp. 2d 658, 666 (E.D. La. 2013) (finding that the arbitration provision was broad where it applied to "all disputes and claims relating to this Agreement or any other agreement entered into between the parties, the rights and obligations of the parties, or any other claims or cause of action relating to the making, interpretation, or performance of either party under this Agreement") (emphasis deleted); *Hill v. Hornbeck Offshore Servs., Inc.* 799 F. Supp. 2d 658, 663 (E.D. La. 2011) (finding that the provision was broad when it applied to "disputes 'arising out of or relating to this Agreement," "any challenge to or controversy or claim arising out of or relating to your employment relationship with the company," "all possible claims or disputes," and stated that arbitration "shall be the sole and exclusive means for resolving any other covered dispute")). Further, the Second Circuit has previously noted that

19

"[i]t is difficult to imagine broader general language than  . . . 'any dispute . . . between Owners and Charterers'" (*Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266 (2d Cir. 1979)), and the Fifth Circuit has agreed (*see, e.g. Sedco*, 767 F.2d at 1145; *Hornbeck*, 981 F.2d at 755).

Defendants also note that there is no reason why the specific causes of action alleged by Plaintiffs should not be arbitrated. Rec. Doc. 26-2 at 11-12 (citing, e.g. *Daniels v. Va. Coll. at Jackson*, 478 F. App'x 892, 893 (5th Cir. 2012) (affirming the district court's order compelling arbitration of several claims, including unjust enrichment, because they "arose 'in relation to [the plaintiff's] enrollment and participation in courses at the College,'" as mandated by the arbitration provision); *Defreitas v. Am. Gen. Fin., Inc.*, No. 01-2756, 2001 WL 1313203, at *3 (E.D. La. Oct. 25, 2011) ("Courts have conclusively decided that there is no legal impediment to arbitration agreements covering statutory claims arising under TILA. As to the Defendants' alleged violations of LUTPA and Louisiana tort and usury laws, the Court is unaware of any legal impediment that would prevent the arbitration of Plaintiffs' claims") (internal citations omitted); *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL 86704, at *1 (E.D. La. Jan. 12, 2009) (the district court granted the motion to compel arbitration where the

plaintiff sought damages for various claims, including unjust enrichment).

Defendants also note that courts in the Fifth Circuit routinely apply class action waivers found in arbitration agreements. Rec. Doc. 26-2 at 13. In *Iberia Credit Bureau, Incorporated v. Cingular Wireless LLC*, the Fifth Circuit determined that an arbitration agreement was not rendered unconscionable or otherwise unenforceable merely because it contained a class action waiver. 379 F.3d 159, 174-75 (5th Cir. 2004). The Fifth Circuit made the following observations:

> A highly relevant factor in considering the equities of the arbitration clauses in this case is that the Louisiana Unfair Trade Practices Act (LUTPA), which is one basis of the plaintiffs' claims, does not permit individuals to bring class actions. *See* LA. REV. STAT. Ann. § 51:1409(A) (authorizing an aggrieved individual to sue "but not in a representative capacity"); *Morris v. Sears, Roebuck & Co.*, [99-2772 (La. App. 4 Cir. 5/31/00); 765 So. 2d 419, 421-22]. Although this prohibition does not apply to the plaintiffs' breach-of-contract cause of action, it does significantly diminish the plaintiffs' argument that prohibiting class proceedings in consumer litigation is unconscionable under Louisiana law. Moreover, LUTPA does permit the state attorney general to sue on behalf of the state and its consumers and to pursue restitutionary relief on behalf of a class of aggrieved consumers. La. Rev. Stat. Ann. §§ 51:1404(B), 1407, 1408, 1414; *State ex rel. Guste v. Gen. Motors Corp.*, 370 So. 2d 477, 487 (La. 1978). This further tends to show that the arbitration clause does not leave the plaintiffs without remedies or so oppress them as to rise to the level of unconscionability.

379 F.3d at 174-75; *see also Dismuke v. McClinton*, No. 16-50674, 2016 WL 6122763, at *1 (5th Cir. Oct. 19, 2016) (where the Fifth

21

Circuit noted that it "is not compelled to reverse its holding that class action waivers in arbitration agreements are enforceable") (citing *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013)); *Vigil v. Sears Nat'l Bank*, 205 F. Supp. 2d 566, 572-73 (E.D. La. 2002).

Based on the broad language of the arbitration agreement at issue (applying to "any claim, dispute or controversy of every kind and nature") and the existing precedent (*see, e.g. Hornbeck*, 981 F.2d 752; *Broussard*, 150 F. Supp. 3d 709), we find that the instant dispute (including any dispute regarding the enforceability of the arbitration clause) falls within the scope of the arbitration agreement.

Further, the FAA provides that

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>shall</u> on application of one of the parties <u>stay the trial</u> of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). "This provision is mandatory and demands a stay of the proceedings, at the request of a party, if the dispute is arbitrable and referred to arbitration." *Broussard* 150 F. Supp. 3d at 721 (citing *Tittle*, 463 F.3d at 417 n.6).

## IV.   CONCLUSION

Because there is a valid arbitration agreement, Plaintiffs' claims fall within the scope of that agreement, and Defendants have requested that arbitration be compelled and this matter stayed,

**IT IS ORDERED** that Defendants' motion to compel arbitration (Rec. Doc. 26) is **GRANTED**. Plaintiffs are directed to submit all of their claims to arbitration.

**IT IS FURTHER ORDERED** that this case is stayed and **ADMINISTRATIVELY CLOSED**. Either party may file a motion to reopen for good cause following the arbitration of the parties' claims. If the case is disposed of through arbitration, or any other means, Plaintiffs shall promptly file a motion to dismiss.

**IT IS FURTHER ORDERED** that the pending motions, including Plaintiffs' "Motion to Certify Class" (Rec. Doc. 19) and "Defendants' Alternative Motion to Dismiss Plaintiffs' First Amended Class Action Complaint" (Rec. Doc. 28) are **DISMISSED AS MOOT**.

New Orleans, Louisiana, this 21st day of February, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE

23